IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GOERGE WATTS, #R06788, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-2594-RJD |
| ) | |
| ALFONSO DAVID, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

**DALY, Magistrate Judge:**[1]

Plaintiff George Watts, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Graham Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Shawnee Correctional Center ("Shawnee"). (Doc. 15, p. 1). Plaintiff claims Defendant Alfonso David ("Dr. David") violated his rights by failing to treat or delaying treatment for a broken or dislocated finger. (Doc. 15, p. 1). After threshold review of the Amended Complaint, Plaintiff was allowed to proceed on the following claim:

> Count 1:  Eighth Amendment claim against Dr. David for delaying or failing to follow through with care for Plaintiff's dislocated or broken pinky finger.

(Doc. 15, p. 1).

---

[1] This matter has been referred to the undersigned, through the parties' consent, to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 24).

Page **1** of **13**

This matter is now before the Court on Dr. David's Motion for Summary Judgment (Doc. 35) and supporting memorandum (Doc. 36) as well as on Plaintiff's Motion for Leave to Amend (Doc. 41).  In his motion, Plaintiff asks to supplement his response to include recent medical records.  Dr. David did not oppose Plaintiff's motion to supplement.  Therefore, Plaintiff's motion is GRANTED.  The Court has considered the documents attached to Plaintiff's motion as part of the record.  For the reasons set forth below, however, the Court finds that Dr. David is still entitled to judgment as a matter of law.  Accordingly, Dr. David's Motion for Summary Judgment is GRANTED.

## Material Facts

Defendant's Motion for Summary Judgment contains a Statement of Facts with proper citation in the record in accordance with Local Rule 56.1.  SDIL-LR 56.1(a); (Doc. 36, pp. 1-7).  Plaintiff filed a response, which, however, does not specifically dispute Defendants' Statement of Facts as required pursuant to Local Rule 56.1.  SDIL-LR 56.1(b); (Doc. 38).  Plaintiff's response further contains factual allegations which do not include proper citation to the record as required pursuant to Federal Rule of Civil Procedure 56(c).  Fed. R. Civ. P. 56(c).

According to local rules, any material fact set forth in a Statement of Material Facts that is not specifically disputed by the opposing party is deemed admitted to the extent the fact is supported by evidence in the record.  SDIL-LR 56.1(g); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).  Further, the Court will disregard any asserted facts that do not contain proper citation to the record, "unless the factual basis for the assertion is clearly identifiable from the parties' related citations or permissible inference." SDIL-LR 56.1(f).  While pro se parties are not exempt from complying with Local Rule 56.1, the Court may, in its discretion, "afford *pro se* litigants leniency to ensure that cases are resolved on the merits." *Harris v. David*, No. 21-CV-

440-DWD, 2025 WL 18667, at *3 (S.D. Ill. Jan. 2, 2025) (citing *Otis v. Demarasse*, 886 F.3d 639, 644-645 (7th Cir. 2018)).  Based on these principles, and having conducted an independent review of the record, the Court makes the following findings of fact.

On May 17, 2022, while in Shawnee, Plaintiff saw a nurse for complaints of an injury to his left pinky finger that he suffered 30 minutes prior while playing basketball.[2]  (Doc. 36, ¶1; Dr. David's Declaration, Doc. 36-3, ¶5; Plaintiff's IDOC Medical Records, Doc. 36-4, p. 2).  The nurse recorded a large bulge at the top of Plaintiff's knuckle, swelling, and limited range of motion, provided Plaintiff with a cold pack and Ibuprofen, and referred him to the doctor.  (*Id.*).  According to Plaintiff, the nurse told him that she put him "in to see Dr. David tomorrow."  (Doc. 38, p. 5).  On May 20, 2022, a chart review was conducted by a nonparty nurse practitioner.  (Doc. 36, ¶2; Doc. 36-3, ¶6; Doc. 36-4, p. 2).  An x-ray was ordered to see if there was any damage to Plaintiff's finger.  (*Id.*).  On May 23, 2022, Plaintiff saw a nurse who provided him with a splint and Ibuprofen and also referred him to a doctor.  (Doc. 36, ¶5; Doc. 36-3, ¶ 7; Doc. 36-4, p. 4).

Dr. David saw Plaintiff on May 24, 2022.  (Doc. 36,¶ 6; Doc. 36-3, ¶ 8).  A review of an x-ray that was conducted earlier that day showed a dislocation of Plaintiff's left fifth digit at the proximal interphalangeal joint.  (Doc. 36,¶ 6; Doc. 36-3, ¶ 8; Doc. 36-4, pp. 5, 8, 13).  Dr. David gave Plaintiff Tramadol for his pain and attempted a closed reduction of his finger, but he was unsuccessful.  (*Id.*).  Dr. David then submitted an urgent request for orthopedic consultation.  (*Id.*).

In his verified Amended Complaint, as well as in his verified response to the motion for summary judgment, Plaintiff alleges that, between the date of injury and his appointment with Dr.

---

[2] While the medical record shows that the day of Plaintiff's injury was May 17, 2022, Plaintiff made inconsistent allegations as to that fact: in his verified Amended Complaint Plaintiff alleges that he injured his finger on May 15, 2022, (Doc. 14, p. 2; Doc. 15, p. 2), while in his response to Dr. David's motion, he alleges that he was injured on May 16, 2022, (Doc. 38, p. 5).

David, he submitted six request slips asking to be seen by Dr. David for his finger, but all went unanswered. (Doc. 15, p. 2; Doc. 38, pp. 2, 5). Plaintiff attached to his Amended Complaint five "Individual in Custody Requests," dated May 16, 2022, May 17, 2022, May 18, 2022, May 19, 2022, and May 20, 2022; in four of those requests, Plaintiff specifically asked to be seen by Dr. David for his dislocated finger. (Doc. 14, pp. 7-11). Plaintiff attested that inmates at Shawnee must place any medical request slips in the "health care unit" box located in the housing corridor; the requests are then collected by the Shawnee Director of Administration. (Doc. 38, p. 2). Plaintiff further attested that he filed emergency grievances for medical treatment for his dislocated finger; he attached to his response a grievance dated June 20, 2022, complaining about his finger still being dislocated. (Doc. 38, pp. 2, 12). Plaintiff alleges that it takes only 72 hours for a dislocated bone to start healing, and that by the time Dr. David attempted the closed reduction on May 24, 2022, his finger had already mended itself together. (Doc. 14, p. 3).

On May 26, 2022, Plaintiff was seen by Physician's Assistant Mason ("PA Mason") at the Orthopaedic Institute of Southern Illinois ("Orthopaedic Institute"). (Doc. 36, ¶ 12; Doc. 36-3, ¶ 10; Doc. 36-4, pp. 14-18). PA Mason attempted another closed reduction, which also failed, and referred Plaintiff to Dr. Steven D. Young ("Dr. Young"). (*Id.*). On June 2, 2022, Dr. David saw Plaintiff and discussed the referral to Dr. Young. (Doc. 36, ¶ 13; Doc. 36-3, ¶ 10; Doc. 36-4, p. 6). On June 10, 2022, Plaintiff saw a nurse practitioner with complaints of pain and swelling in his finger; he was provided with pain medication and was advised of his upcoming appointment with Dr. Young. (Doc. 36, ¶ 14; Doc. 36-3, ¶ 45; Doc. 36-4, pp. 6, 7-19).

On June 28, 2022, Plaintiff saw Dr. Young regarding his finger pain and loss of functional use. (Doc. 36, ¶ 15; Doc. 36-3, ¶ 12; Doc. 36-4, pp. 19-24). Based on a review of the recent x-ray, Dr. Young recommended an open reduction with possible internal fixation of the proximal

interphalangeal joint. (Doc. 36, ¶ 15; Doc. 36-3, ¶ 12; Doc. 36-4, pp. 1245, 1253-1257). On July 5, 2022, Dr. David submitted a referral for the recommended open reduction and internal fixation, which was performed on September 9, 2022. (Doc. 36, ¶ 16; Doc. 36-3, ¶¶ 13-14; Doc. 36-4, p. 29; Plaintiff's Medical Records from the Orthopedic Institute, Doc. 36-5, pp. 11-13).

On September 12, 2022, Dr. David referred Plaintiff to Dr. Young for a follow-up. (Doc. 36, ¶ 18; Doc. 36-3, ¶ 15; Doc. 36-4, p. 26). On September 23, 2022, Plaintiff saw Dr. Young and denied any issues. (Doc. 36, ¶ 19; Doc. 36-3, ¶ 16; Doc. 36-4, pp. 27-31). The physical examination showed that the alignment of the pin across Plaintiff's proximal interphalangeal joint was in excellent position, and Plaintiff was ordered to remain in a splint for another ten days. (*Id.*).

On September 26, 2022, Dr. David referred Plaintiff to Dr. Young for another follow-up. (Doc. 36, ¶ 19; Doc. 36-3, ¶ 17; Doc. 36-4, p. 32). On October 6, 2022, Plaintiff saw Dr. Young and PA Mason and reported that he was doing well but was still experiencing discomfort in his finger. (Doc. 36, ¶ 21; Doc. 36-3, ¶ 18; Doc. 36-4, pp. 40-42). It was recommended that the pin be removed from his finger, he be placed in a splint, begin therapy for a gentle range of motion, and follow up again in two weeks. (*Id.*). On October 14, 2022, Dr. David submitted referrals for Plaintiff's home exercise program and follow-up appointment with Dr. Young. (Doc. 36, ¶ 22; Doc. 36-3, ¶ 19; Doc. 36-4, pp. 33-34). Plaintiff, however, counters that he was directed to complete therapy following his surgery, which he never received. (Doc. 14, p. 3).

On October 21, 2022, Plaintiff had a follow-up at the Orthopaedic Institute and reported that he had been working on range of motion and not been wearing his splint; he complained of stiffness but only minimal pain. (Doc. 36, ¶23; Doc. 36-3, ¶ 20; Doc. 36-4, pp. 35-39).[3] Physical

---

[3] Defendants allege that Plaintiff was seen by Dr. Young, but the cited medical record was signed by PA Mason.

Page **5** of **13**

examination showed a well-healed incision but very minimal movement at his PIP joint and a fair amount of swelling. (*Id.*). Plaintiff was cautioned that he needed to be more aggressive with his range of motion and to discontinue using the splint; he was set for a follow-up in four weeks, for which Dr. David issued a referral on October 25, 2022. (Doc. 36, ¶¶ 24-25; Doc. 36-3, ¶ 21; Doc. 36-4, pp. 38-39, 43).

Dr. David saw Plaintiff again on November 9 and 15, 2022, with reports that his left pinky finger remained swollen. (Doc. 36, ¶ 25; Doc. 36-3, ¶ 22; Doc. 36-4, p. 9). Dr. David ordered Plaintiff to work more on his range of motion exercises and advised him that he was scheduled for a follow-up with Dr. Young. (*Id.*). On December 6, 2022, Plaintiff visited the Orthopaedic Institute and complained of pain in his finger. (Doc. 36, ¶ 26; Doc. 36-3, ¶¶ 22-23; Doc. 36-4, pp. 44-48). It was noted that significant scar tissue was developing at both the tendon and the PIP joint; it was recommended that Plaintiff continue to work on passive range of motion for three months and then be reevaluated for a possible tenolysis if there was no improvement. (*Id.*).

On January 17, 2023, Dr. David referred Plaintiff to Dr. Young for another follow-up. (Doc. 36, ¶ 27; Doc. 36-3, ¶ 24; Doc. 36-4, p. 1). Plaintiff saw Dr. Young at the end of January and complained of numbness in his entire left hand and stiffness in his finger. (Doc. 36, ¶ 28; Doc. 36-3, ¶ 25; Doc. 36-5, pp. 1-3).[4] Dr. Young assessed Plaintiff with possible nerve compression on his left upper extremity, as well as arthrofibrosis and tendon adhesion; he noted that Plaintiff had approximately 20 degrees of active flexion, restoring a complete range of motion was extremely unlikely, and he ordered a nerve conduction study.[5] (*Id.*).

---

[4] Defendants allege that this follow-up visit was on January 31, 2023, but the cited record is dated January 30, 2023.
[5] Arthrofibrosis is an abnormal or excessive growth of scar tissue. (Doc. 36, ¶ 29; Doc. 36-3, ¶ 44).

On February 2, 2023, Dr. David saw Plaintiff for complaints of tingling in his left three fingers and left small finger stiffness. (Doc. 36, ¶ 30; Doc. 36-3, ¶ 26; Doc. 36-4, pp. 10, 50). Dr. David ordered him to continue his home exercise program and submitted a referral for a nerve conduction study and electromyography of his left hand. (*Id.*). On March 20, 2023, Plaintiff underwent the nerve conduction study and electromyography, which showed that he had carpal tunnel syndrome in his left hand. (Doc. 36, ¶ 33; Doc. 36-3, ¶ 29; Doc. 36-5, p. 7).

On March 27, 2023, Dr. David saw Plaintiff and advised him of Dr. Young's assessment for the possible need for further surgical intervention; he further issued another referral for Dr. Young. (Doc. 36, ¶ 34; Doc. 36-3, ¶ 30; Doc. 36-4, pp. 11, 51). On March 30, 2023, PA Mason explained to Plaintiff that the recent testing revealed severe median neuropathy; he recommended that Plaintiff undergo capsulectomy and extensor tenolysis and continue range of motion and PT exercise. (Doc. 36, ¶ 36; Doc. 36-3, ¶ 31; Doc. 36-4, p. 49).[6]

On April 6, 2023, Dr. David referred Plaintiff for capsulectomy and extensor tenolysis, and on June 8, 2023, he issued Plaintiff an indefinite medical permit for a left wrist brace. (Doc. 36, ¶¶ 38-39; Doc. 36-3, ¶¶ 34-35; Doc. 36-4, pp. 52, 55). On June 28, 2023, Plaintiff underwent an extensor tenolysis of his small finger and capsulotomy of his proximal interphalangeal joint. (Doc. 36, ¶ 40; Doc. 36-3, ¶ 36; Doc. 36-5, pp. 8-10). Following the surgery, Dr. Young recommended that Plaintiff undergo therapy three times a week for six weeks. (Doc. 36, ¶ 41; Doc. 36-3, ¶ 37; Doc. 36-4, pp. 52-53). On July 12, 2023, Plaintiff had another follow-up visit with PA Mason, at which time he reported that his left hand was doing very well and could get his pinky finger to his

---

[6] A capsulotomy is a surgical procedure that involves cutting or releasing the fibrous capsule around a finger joint to improve its range of motion, while tenolysis is a surgical procedure to release or free a tendon from adhesions (Doc. 36, ¶37; Doc. 36-3, ¶¶ 32-33).

palm; he denied any issues other than some swelling. (Doc. 36, ¶ 42; Doc. 36-3, ¶ 38; Doc. 36-5, pp. 4-7). PA Mason recommended a follow-up evaluation after completion of the ordered occupational therapy. (*Id.*).

On July 19, 2023, Dr. David saw Plaintiff and advised that he was to do occupational therapy for his carpal tunnel syndrome and left pinky finger. (Doc. 36, ¶ 43; Doc. 36-3, ¶ 38; Doc. 36-4, p. 12). On September 5, 2023, Plaintiff had another follow-up visit with Dr. Young and reported that his left hand was doing much better, and his range of motion was near full. (Doc. Doc. 36, ¶ 44; 36-3, ¶ 39; Doc. 36-4, p. 54). He was thereafter released from Dr. Young's care. (*Id.*).

Plaintiff alleges that he is permanently disfigured and has not regained full range of motion on his left hand, which is Plaintiff's dominant hand. (Doc. 38, p. 5 ). Examination of Plaintiff's finger on March 29, 2025, showed swelling and a limited range of motion with bending of Plaintiff's left pinky finger. (Doc. 41, p. 3).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of*

*Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

The Eighth Amendment "'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Brown v. Osmundson*, 38 F.4th 545, 559-60 (7th Cir. 2022) (internal citations omitted).  To succeed on his deliberate indifference claims, Plaintiff must "provide evidence, either direct or circumstantial," establishing that "he had an objectively serious medical need," which the defendant knew of but disregarded.  *Id.* at 550.  Negligence or even recklessness does not constitute deliberate indifference; the defendant must have shown "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id.*

Further, the Seventh Circuit has explained that "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).  At the same time, deliberate indifference may be established when a medical provider with knowledge of a significant risk to an inmate's health or safety delays the inmate's "treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citation omitted).

Here, there is sufficient evidence on the record to infer that Plaintiff suffered a serious medical need, in the form of a dislocated finger, pain, and loss of range of motion, which precludes summary judgment on that ground.  *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) (medical notes reporting severe swelling, loss of function and mobility extending four fingers,

hand discoloration, and possible or probable fracture suggested a serious medical need); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (allegations for openly dislocated finger sufficed to state a serious medical need). Plaintiff alleges that Dr. David was deliberately indifferent for two reasons. First, because he allegedly knew Plaintiff had dislocated his finger but did not see him until six days after Plaintiff's injury. Second, Plaintiff argues that Dr. David failed to provide him with the ordered therapy following his first surgery. The Court will address its argument in order.

*Treatment Delay*

Plaintiff's claim that Dr. David was deliberately indifferent in delaying his treatment for six days fails for two reasons. First, the record does not support a finding that Dr. David was aware of Plaintiff's dislocated finger prior to May 24, 2022, when he first saw Plaintiff. Plaintiff claims that Dr. David was aware of his injury because he submitted six request slips specifically referencing Dr. David. However, Plaintiff's own testimony shows that those written requests are submitted to boxes and then collected by the Director of Administration, who is not a party in this action. There is nothing in the record indicating that the Director of Administration provided written requests to Dr. David prior to May 24, 2022. Plaintiff further alleges that Dr. David had access to Plaintiff's earlier medical records, but there is nothing in the record suggesting that Dr. David reviewed Plaintiff's medical record prior to May 24, 2022. There is also no indication that Dr. David was in charge of setting inmates' medical appointments. Accordingly, even reviewing the record in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, no reasonable jury could infer that Dr. David was aware of Plaintiff's serious medical need prior to May 24, 2022, and yet deliberately delayed his treatment.

Furthermore, even assuming that there was a genuine dispute as to Dr. David's state of mind between the day of Plaintiff's injury and May 24, 2022, Plaintiff has failed to show that the

alleged delay in his medical treatment caused Plaintiff injury. There is no dispute that between the day of his injury and May 24, 2022, when Plaintiff saw Dr. David, Plaintiff received pain medication and underwent x-rays. As to his limited range of motion, Plaintiff argues that it takes only 72 hours for a dislocated bone to start healing, and that by the time Dr. David attempted the closed reduction on May 24, 2022, his finger had already mended itself together. (*Id.*). However, when the issue is a delay in the medical assistance rather than its denial, the plaintiff must "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) (citation and internal quotation marks omitted). The Seventh Circuit has clarified that expert testimony is not the sole form of acceptable verifying medical evidence to establish a delay or mistreatment in this context. *Grieveson v. Anderson*, 538 F.3d 763, 779–80 (7th Cir. 2008). Nevertheless, evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient to make such a showing "*if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him.*" *Id.* (quoting *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (emphasis in the original)).

      Here, Plaintiff's allegation that it takes only 72 hours for a dislocated bone to start healing is not admissible evidence: Plaintiff has no medical education or training and may not provide expert testimony as to that effect. Not only is there no expert testimony supporting Plaintiff's allegation, but Plaintiff's diagnosis and treatment notes also do not contain any indication as to the correlation, let alone causation, between any delay in Plaintiff's treatment and his alleged permanent loss of range of motion. In short, nothing in the admissible record would allow a reasonable jury to infer that Plaintiff's loss of range of motion would have been prevented if Dr. David had attempted a closed reduction within 72 hours of Plaintiff's injury.

*Failure to Provide Post-Surgery Therapy*

Plaintiff further alleges that Dr. David was deliberately indifferent to his serious medical need in that he failed to provide him with ordered therapy following Plaintiff's first surgery. Specifically, in his verified response to Defendant's motion, Plaintiff alleges that after his "1st Surgery on 6/29/2023 to 07/07/2023," he was ordered "therapeutic exercise each 15 minutes." (Doc. 38, p. 4). He further refers to a medical record dated August 22, 2023, which indicates that "there is no therapy inside the facility he resides at" and that after his second surgery, between August 15, 2023, to September 16, 2023, he was on "therapy treatment line at the Health Care Unit" per Dr. Young's new request. (*Id.*). Later on, Plaintiff further references medical notes between August 2, 2023, and August 22, 2023, where Dr. Young mentioned "no further OT recommended." (*Id.*).

Even though Plaintiff argues that he was denied treatment after his first surgery, all referenced dates and cited records are from the period following his second surgery on June 28, 2023. Accordingly, those allegations are insufficient to create a genuine question of fact as to whether Plaintiff was denied therapy following his first surgery on September 9, 2022. In fact, the record shows that on October 6, 2022, Dr. Young recommended that Plaintiff begin therapy for a gentle range of motion, and that on October 14, 2022, Dr. David submitted referrals for Plaintiff's home exercise program. Plaintiff was directed by the medical providers at the Orthopaedic Institute to continue working on his range of motion exercises at least through February 2, 2023. To the extent Plaintiff argues that Dr. Young had ordered outpatient therapy that Dr. David failed to provide, there is nothing in the record to show that Dr. David was aware of the need for such alternative therapy, other than the referred home exercise program, yet he deliberately denied it. While Plaintiff states in his response to the motion as well as in his verified Amended Complaint

that Dr. David was aware of his medical need for therapy following his first surgery, this is merely a conclusory statement insufficient to create a genuine dispute as to Dr. David's state of mind.

Further, the Court clarifies that any claim for deliberate indifference relating to Plaintiff's treatment after the filing of the Amended Complaint, including Plaintiff's second surgery and treatment provided thereafter, is not currently before the Court and cannot be the basis of Dr. David's liability.  In any case, the record shows that Dr. David saw Plaintiff on July 19, 2023, after his second surgery, and ordered him to do occupational therapy for his carpal tunnel syndrome and left pinky finger.  Nothing suggests that Dr. David was in charge of scheduling appointments for inmates, nor can he be held responsible for the schedules of outside providers.

Based on the foregoing, no reasonable jury could infer that Dr. David was deliberately indifferent to Plaintiff's medical needs.  Therefore, Dr. David is entitled to summary judgment as a matter of law.

### Conclusion

For these reasons, Defendant's Motion for Summary Judgment (Doc. 35) and Plaintiff's Motion for Leave to Amend (Doc. 41) are **GRANTED.**  This case is **DISMISSED with prejudice**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

IT IS SO ORDERED.

DATED: August 13, 2025

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**